

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| K&K IRON WORKS, INC., | ) |
| Plaintiff/Counterdefendant, | ) |
| | ) No. 07 C 1832 |
| vs. | ) Judge Sidney I. Schenkier |
| | ) |
| AMERICAN RAILING SYSTEMS, INC., | ) |
| Defendant/Counterplaintiff. | ) |

## MEMORANDUM OPINION AND ORDER[1]

On February 6, 2007, plaintiff, K&K Iron Works, Inc. ("K&K"), originally brought suit against defendant, American Railing Systems, Inc. ("ARS"), in Illinois state court to recover for alleged breaches of contract and warranties of merchantability and fitness. On April 3, 2007, ARS removed K&K's state court complaint to this Court, asserting diversity jurisdiction, pursuant to 28 U.S.C. § 1332. In this action, K&K seeks to recover from ARS in connection with a contract entered into by the parties in September 2004 regarding the construction of Museum Park Tower IV in Chicago, Illinois (the "Museum Park" contract).

ARS then filed an answer to the complaint, as well as a two-count counterclaim. Count I of the ARS counterclaim alleges breach by K&K of the Museum Park contract. Count II alleges breach by K&K of a second and separate contract, involving the design, manufacture, and supply of railings and shoes by ARS for a different K&K development: Sherman Plaza, in Chicago, Illinois (the "Sherman Plaza" contract). K&K has filed a motion to dismiss Count II of ARS's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction (doc. #

---

[1] On June 12, 2007, the Executive Committee reassigned this case for all proceedings, including the entry of final judgment, pursuant to full consent of all the parties and 28 U.S.C. § 636(c) (doc. ##15, 18).

22). For the following reasons, we agree with K&K and therefore grant the motion to dismiss Count II of the counterclaim.

## I.

We begin with the material factual background. Sometime in 2004, Kenny Construction Company ("Kenny"), the general contractor on the Museum Park project, contracted with K&K for the installation of balcony railings and planter boxes at the project. In September 2004, K&K in turn entered into a contract with ARS, which required ARS to manufacture and supply balcony railings and cast aluminum shoes for installation at the Museum Park project. ARS provided the railings and shoes to K&K for the Museum Park project, and K&K installed these railings throughout 2005 and the first half of 2006.

In May 2006, one of the railings supplied fell from the 36th floor of the Museum Park tower. What caused the railing to fall is disputed. The building owner Kenny contended that the cast aluminum shoes made by ARS supporting the railings were too weak to withstand typical wind forces. ARS maintained that it built the cast aluminum shoes to specifications, and thus met its obligations. However, the building owner and the construction company maintained that the only way to fix the problem was to replace the cast aluminum shoes with stronger extruded aluminum shoes.

Eventually, ARS offered to supply extruded aluminum shoes to K&K to replace the cast aluminum shoes, and K&K agreed to install the new shoes. The terms of this new agreement, however, are contested. ARS contends that it agreed to supply the shoes at a cost of $103,820.00; K&K contends that ARS agreed to pay the labor costs of removal of the cast aluminum shoes and replacement with the extruded aluminum shoes. The dispute between the parties relates to the

provisions of their agreement concerning the replacement shoes for the Museum Park contract, and it comprises the basis for K&K's Complaint and for Count I of the Counterclaim.

Count II of the ARS Counterclaim pertains to a separate contract between K&K and ARS, concerning an entirely different residential building project. In June 2006, one month after a railing fell from the Museum Park project, K&K contracted with ARS to supply railings for the Sherman Plaza project. According to its counterclaim, ARS provided the specified railings and shoes to the Sherman Plaza project, and K&K installed the material at the Sherman Plaza building. It appears that K&K paid ARS some 70 percent (over $123,000) of the contracted price for the Sherman Plaza railing materials. However, ARS contends that when the parties were unable to resolve issues surrounding the Museum Park project, K&K refused to pay ARS the remainder for the railing and material delivered to the Sherman Plaza site.

In the briefing of the motion to dismiss, ARS submitted a September 21, 2006 letter from K&K to ARS concerning the Sherman Plaza dispute (ARS Resp., Ex. A). In that letter, K&K stated that ARS had not yet supplied "all material required to complete this project," and that "due to [ARS's] failure to stand behind their product at Museum Park, we would also require your warranty before final payment is made" (*Id.*). K&K also wrote that, "[a]lthough we are deeply disappointed with [ARS's] response to the issues at Museum Park, it is our interest and obligation to reimburse [ARS] 100% for the work at Sherman Plaza when and if it is completed by [ARS]" (*Id.*). Apparently, the parties never resolved their conflict regarding the Sherman Plaza project. Thus, in Count II of the Counterclaim, ARS alleges that K&K failed to pay, and thereby breached the Sherman Plaza contract. In that counterclaim, ARS seeks to recover the remaining $52,678.00 on the Sherman Plaza contract.

## II.

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim over which the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The presumption is that a cause of action lies outside [the] limited scope of [federal] jurisdiction." *Amoakowaa v. Reno*, 94 F. Supp.2d 903, 904 (N.D. Ill. 2000) (citing *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994)). The party wishing to assert jurisdiction – here, ARS – bears the burden of proving that a jurisdictional basis exists. *Kokkonen*, 511 U.S. at 377.

In reviewing a 12(b)(1) motion, the Court must accept all well-pleaded factual allegations as true, and "draw all reasonable inferences in favor of the plaintiff." *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003). Additionally, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (internal citation omitted).

## III.

Under Rule 13(a), a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . [and] does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A)-(B). "[A] compulsory counterclaim does not require an independent grant of jurisdiction." *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 410 (7th Cir. 2004) (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593, 609 (1926)).

Rule 13(b) defines a permissive counterclaim as "any claim that is not compulsory." Fed. R. Civ. P. 13(b). Because a permissive counterclaim does not arise out of the transaction or

occurrence that gives rise to the opponent's claim, a permissive counterclaim "requires an independent basis of federal jurisdiction." *Oak Park Trust and Savings Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cr. 2000). *See also, Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir. 1991); *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 961 (7th Cir. 1982); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974).

Thus, in deciding whether the Court has subject matter jurisdiction over Count II of ARS's Counterclaim, we consider at the threshold whether that counterclaim is compulsory. Since Count II does not require adding a new party to this suit, we focus on whether that counterclaim arises out of the same "transaction or occurrence" as the subject matter of K&K's complaint.

A.

The Seventh Circuit has recognized that "the words 'transaction or occurrence' should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a)." *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977). The purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Southern Constr. Co. Inc. v. Pickard*, 371 U.S. 57, 60 (1962). Therefore, the Seventh Circuit has adopted a "logical relationship" test, construing the phrase "transaction or occurrence" liberally to include a series of many logically related, if not temporally close, occurrences. *Warshawsky*, 522 F.2d at 1261. In the *Warshawsky* case, for example, the original claims pertained to breaches of a five-year contract. The counterclaims, which the court held to be compulsory because they arose out of the same transaction, pertained to the continued business relationship between the parties (after the contract had expired) while they attempted to negotiate a new deal. *Id.* at 1259, 1261-1262.

5

The Seventh Circuit has also stressed that, notwithstanding this rule of liberal construction, the factual allegations underlying each claim must be carefully examined to determine if the claims are logically related. *Burlington Northern R.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990). A court must consider if the "totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds" suggest that the claims are logically related. *Id.*

Applying this governing Seventh Circuit law, we hold that Count II of the ARS Counterclaim does not arise out of the same transaction or occurrence as the claim K&K asserts in the initial complaint. The Sherman Plaza development is a completely different development than the Museum Park development: the two buildings are not in the same location, and the railings supplied by ARS and installed by K&K at the two developments are distinct in design and manufacture. Unlike the case in *Warshawsky*, 522 F.2d at 1261-62, nothing suggests that the work at Sherman Plaza was merely an extension of the work done at Museum Park. Rather, the two developments were governed by entirely different contracts. In addition, the factual issues surrounding the two claims are not closely related: K&K's Complaint alleges defective performance by ARS on the Museum Plaza project, while Count II of ARS's Counterclaim alleges that K&K failed to perform by failing to pay in full on the Sherman Plaza contract. Duplication of evidence is unlikely if the claims are tried separately.

ARS asserts that K&K's September 2006 letter "intertwines" the Sherman Plaza and Museum Park projects, so as to render the disputes concerning these contracts as those that "arise from the same transaction" (ARS Resp. at 5 and Ex. A). We disagree. As a factual matter, the letter does not link any failure by K&K to pay on the Sherman Plaza contract with its dissatisfaction with

6

ARS's performance on the Museum Park contract. On the contrary: K&K's letter premised K&K's failure to pay on an alleged failure by ARS to supply all the contractually required material for the Sherman Plaza project, and not on the dispute concerning the Museum Park project. K&K stated its readiness to fully pay ARS for the Sherman Plaza project – despite the Museum Park dispute – once ARS completed its work on the Sherman Plaza project. In our judgment, the September 2006 letter fails to advance ARS's claim that the Museum Park and Sherman Plaza disputes arise out of the same transaction or occurrence.

We recognize that, as a practical matter, K&K's apparent dissatisfaction with ARS's performance on the Museum Park project likely influenced K&K's approach in dealing with ARS on the Sherman Plaza project: hence, K&K's reference in the September 2006 letter to requiring a warranty from ARS due to K&K's experience with ARS on the Museum Park project. From this, ARS argues that the only reason that there was a failure to pay (and thus a dispute) on the Sherman Plaza contract was because of K&K's pique over the Museum Park project. However, the September 2006 letter does not say this, and we are not prepared to allow ARS to merge these two contracts and the two disputes into one transaction by allowing a connection based on K&K's alleged subjective intent. Despite the liberality of the "same transaction" test, it would stretch that test past the breaking point to extend the test to encompass that kind of connection. *See Gilldorn*, 804 F.2d at 397 (while recognizing that two claims were technically related, the court concluded that "the two actions [were] based on separate transactions and 'lack[ed] any shared realm of genuine dispute'" where they were based on independent contracts involving different legal theories and factual issues) (quotations omitted).

For the foregoing reasons, we conclude that Count II of the Counterclaim is permissive, rather than compulsory.[2]

**B.**

A counterclaim that is not compulsory is permissive, as we explained above, and must have an independent basis for federal jurisdiction. Under *Oak Park Trust*, supplemental jurisdiction cannot provide the basis for federal jurisdiction. 209 F.3d at 651 (a permissive counterclaim falls outside the grant of supplemental jurisdiction contained in 28 U.S.C. § 1367(a), which extends only to "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"). By concluding that the Count II of the ARS Counterclaim is not compulsory, we likewise concluded that it fails to meet the test for supplemental jurisdiction under Section 1367(a).[3]

Thus, if Count II of the Counterclaim is to remain in federal court, ARS must offer some different basis for the exercise of federal jurisdiction. ARS offers none, and we see none. The state law claim alleged in Count II of the Counterclaim does not arise under the federal law, thus eliminating 28 U.S.C. § 1331 as a potential basis for federal subject matter jurisdiction. There is no

---

[2] ARS correctly points out that the legal issues raised by Count II of the Counterclaim are not necessarily more complex than the issues raised in the original complaint. However, that consideration does not overcome the factors showing that Count II fails to arise out of the same transaction or occurrence as K&K's complaint.

[3] ARS cites *Channell v. Citicorp. Nat. Services, Inc.*, 89 F.3d 379, 384 (7th Cir. 1996), for the proposition that Section 1367(a) requires only a "loose connection between claims" as a predicate for supplemental jurisdiction (ARS Resp. at 7). We agree, but as we explained above, Count II of the Counterclaim does not share even that kind of connection with K&K's Complaint. The evidence needed to prove or defend the one claim is different from that needed to prove the other, so that the trial of the K&K claim would be completely unaffected if Count II of ARS's Counterclaim were dismissed. That factor has been persuasive to numerous courts in ruling that claims did not qualify for supplemental jurisdiction under Section 1367(a). *See Eager v. Commonwealth Edison Co.*, 187 F. Supp.2d 1033, 1040 (N.D. Ill. 2002); *Eigenbauer v. Am. Mattress*, No. 07 C 3032, 2007 WL 3231426, *1-2 (N.D. Ill., Oct. 30, 2007); *Angsten v. Blameuser*, No. 05 C 4254, 2005 WL 3095513, *3-5 (N.D. Ill., Nov. 16, 2005); *Riva Techs. Inc. v. Zack Elecs. Inc.*, No. 01 C 1390, 2002 WL 1559584, *4-5 (N.D. Ill., July 12, 2002).

dispute that K&K and ARS are citizens of different states, which satisfies one of the elements necessary for diversity jurisdiction under 28 U.S.C. § 1332. But, there likewise is no dispute that Count II involves a claim for less than $75,000, and thus fails to satisfy the jurisdictional amount needed for the Court to exercise diversity jurisdiction. *See By-Prod*, 668 F.2d at 961 (court lacks subject matter jurisdiction over permissive state law counterclaim that failed to satisfy the amount in controversy required for diversity jurisdiction).

## CONCLUSION

For the foregoing reasons, the Court grants K&K's motion to dismiss Count II of the counterclaim for lack of subject matter jurisdiction (doc. # 22). Because the basis for dismissal is lack of subject matter jurisdiction, *see Leaf v. Supreme Court of the State of Wisc.*, 979 F.2d 589, 595 (7th Cir. 1992), *cert. denied*, 508 U.S. 941 (1993); *Winslow v. Walters*, 815 F.2d 1114, 116 (7th Cir. 1987), our dismissal is not on the merits and thus is entered without prejudice.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: February 28, 2008**

9